Good morning, Your Honors. Anthony Bisconti of Boehner Katzmann. I'm here on behalf of Appellant Seila Law LLC. I'd like to reserve two minutes. You'll have to keep track of your time. Thank you, Your Honor. Your Honors, the issue before the Court today was decided over 200 years ago by the founders and framers of the Constitution. Well, why wasn't it decided in 2018 by the Enbank D.C. Circuit in an appropriately analyzed decision? Why should we depart from their analysis? Respectfully, one, it's obviously not binding on this Court, but two, I believe the well-reasoned dissents of Judges Henderson and Kavanaugh, now Justice Kavanaugh in that case, are the better reasoned decisions and the path the Courts should follow today. As Justice Kavanaugh and Henderson both detail in their dissents, the Consumer Financial Protection Bureau is unlike anything we've seen as a country prior. It's unlike the two limitations that were on the Presidential's removal power that were noted in Humphrey's Executor in 1936 and in Morrison in, I believe it was 1986. Those two cases set the outer limits of the restrictions that Congress can place on the President's removal power under Article II. And they're much different than the agency that we have before us today with the CFPB. In Humphrey's Executor, of course, it was a, and this has been detailed in the briefs, and it was covered extensively by the D.C. Circuit in the THH case by all judges who wrote decisions on that case. But Humphrey's Executor was a different agency, different executive agency. It was and is the FTC, a multi-member agency with its own internal checks and balances, staggered terms for the multi-members of the Commission. So over the course— Is the issue here the single member versus a body of individuals, is that the key difference that you believe makes a difference? I believe it does make a difference. In terms of what this Court can decide, I believe that is the key difference. I don't think this Court can, in light of Humphrey's Executor, and it's a Supreme Court case, I don't think this Court can go beyond that to say that it is a, to say that the single director structure of the CFPB can be validated or invalidated in light of Humphrey's Executor, if the Court believes that Humphrey's Executor stands for the proposition that this type of restriction on the President's removal power is constitutionally permitted. I believe that has to be resolved at a higher court. But I don't think the Court needs to get or to reach that point because I do believe that Humphrey's Executor is a much different case than what we have here because of the difference between the multi-member body. But why—that is a factual difference, but why does it matter analytically? The PHH majority said, and I know you don't agree with the majority, but they did observe that the Supreme Court's cases don't rely on the number of individuals as distinct from the function and other factors. So why does that factual distinction matter? I believe it matters because of the guiding principle that the Court needs to focus on, is whether the structure creates an infringement or encroachment on the Executive's power. And where there is a multi-member commission or agency and the President has the ability to influence, upon taking offense in January of whatever year the President is inaugurated, the President, he or she, will be able to appoint chairs of those commissions who have substantial influence over them. Over the course of a four-year presidential term, the President will likely be able to appoint new members of that commission. And here, with a single director, the President is potentially and very realistically handicapped from being able to do that. Does it matter that the director has actually resigned and that there's an acting director who can easily be removed at will? I don't believe it does, Your Honor. I don't believe you can remedy a structural defect, a constitutional defect, by this. It's basically a procedural anomaly because the acting director resigned. And you'll recall this issue, I mean, it very prominently came to a head in the D.C. Circuit again in the English v. Trump case because when the prior director Cordray resigned, he attempted to appoint his replacement and that came to an issue and the case was ultimately dismissed because the plaintiff in that case, Ms. English, resigned from the CFPB. So it resolved itself. It didn't need to get resolved. But I don't believe you can fix or cure a structural constitutional defect by having a temporary fix in between the next director, where we'll be in the exact same position, if the next director is appointed. The next director has already been confirmed, right? Well, correct, Your Honor. And so they're going – now Justice Kavanaugh pointed this out in his dissent. Now that acting director – There's not an acting director. I'm sorry. Now the confirmed director, the director in place currently, in light of the five-year term, will be going over into 2023, I believe it is. And that, depending on what happens with the next presidential election, that could limit the president from having any input over who the director is until the last year of his or her term. And so it is a substantial encroachment on the president's ability to see that the laws are faithfully executed because the next president, assuming it's not the current – assuming President Trump doesn't get reelected. So before you run out of time, we ordinarily do not declare things broadly unconstitutional when we don't have to. But assuming, for the sake of this question, that we agree with your argument that the absence of an at-will opportunity to get rid of the director renders this statute unconstitutional, why wouldn't we just sever that and permit at-will firing, and that is to cabin the result? I know that's not the result your client wants because they don't want to have to live with this subpoena. But why wouldn't that be the appropriate analysis? Well, I don't believe my clients alone in what they want. But in terms of the analysis, you're correct, Judge Graber, that normally, if you're going to deem this portion of the statute unconstitutional, it would be severed. Where that's not appropriate, and this is in the Alaska Airlines case cited in our brief, is where the severance would result in a statute fundamentally different and distinct from the other. The only difference is how easily one could get rid of the head honcho. Nothing else would change. Why is that so fundamental?  One, there's no indication that Congress would have abdicated its own oversight over this agency. Remember, there's no congressional oversight in terms of the appropriations. There's no indication that Congress would have abdicated its oversight of this agency in favor of allowing the president full oversight and being able to remove the head of this agency at will. But why doesn't the severability clause answer that question? Because, one, there's no evidence that the severability clause, that when the drafters of this statute included that clause, they had in mind the potential for severing this specific provision of the statute. But they didn't limit it to only certain things. It's not limited in the language of the statute, but we do know from subsequent statements, from concurrent statements at the time the law was passed, that the independence of the agency was of the utmost importance. And we do know from subsequent statements by members of Congress, including Senators Dodd and Frank in briefings submitted in the PHH case when it was before the D.C. Circuit, they stated that severing this provision would fundamentally alter the CFPB and hamper its ability to function as Congress intended. And they do not speak for Congress, right? They speak for themselves. Those members of Congress, I can't say whether they speak for all of Congress or not. Well, in that form, they can't possibly. So you disagree with now Justice Kavanaugh's dissent, that part of his dissent? That part of his dissent I do disagree with. I believe Judge Henderson had the better reason decision in terms of the severability. You're down to just a few seconds, but we used quite a bit of it with questions, so you may have one for rebuttal. Thank you, Your Honors. Thank you. May it please the Court, Kevin Friedel for the Consumer Financial Protection Bureau. I'd like to start with a point raised by Judge Watford concerning the new leadership at the Bureau. As the Court is aware, last month the Senate confirmed Kathleen Kraninger as Director of the Bureau, replacing Acting Director Mick Mulvaney. Director Kraninger's confirmation has no effect on the validity of her predecessor's ratification of the CID in this case. I had a question about that. I was unable to find in the record evidence of the ratification that's discussed in your brief, and I may have just missed it. Can you point me to the place where that appears? The only documentation of that is the brief itself, which is sufficient to establish the ratification under the restatement of agency. All that's required for a valid ratification is a manifestation of assent to the prior action. The Court can take judicial notice of the fact that the Bureau, under the leadership of Acting Director Mick Mulvaney, filed that brief and continued to pursue this action. If the Court, however, wanted more reassurance on that point, there is documentation we'd be happy to file with the Court. We didn't want to preemptively. Ordinarily, we look at the record for evidence of factual statements, and it seems to me that the ratification is factual in nature, whether the Acting Director agrees with a position or not, assuming that's even relevant. But I just had never thought that a brief would suffice for that, but it's an interesting argument. Well, it's not just the statement in the brief, but it's the fact that the Bureau filed that brief under the leadership of Mick Mulvaney, I think, is enough documentation to establish it. We, again, would be happy to provide more information or more documentation to the Court if the Court invites that. However, if the Court is doubtful that the evidentiary record establishes the ratification, we would ask that the Court go ahead and reach the merits of the constitutional issue. That would also be appropriate in light of the new leadership at the agency, because the Bureau is now headed by an official to whom the forecast removal protection applies. We expect that this is going to remain a disputed point between the parties. And if left unresolved by the Court, could result in significant further delays to the course of this investigation, hamper any further CIDs that the Bureau might issue or potentially enforcement actions. If the Court does go to reach the merits of the constitutional issue, we think it should follow the only court of appeals to have decided this issue and uphold the constitutionality of the forecast protection as the en banc D.C. Circuit did last year. Can I ask you to address this point? It's troubling me a bit. The Bureau's power and structure seems to me to be a bit novel. There is much power vested in a single individual who is not elected and cannot be discharged. And when you look at the individual facets of the Bureau, if we look at them collectively, doesn't that distinguish this agency from all others? The fact, and I'm now quoting, that it has power that is massive in scope, concentrated in a single person, and unaccountable to the President. Doesn't that raise separation of power concerns? Your Honor, the relevant test that the Supreme Court has set out in this area looks to the removal restrictions and asks whether they impede the President's ability to ensure the faithful execution of the laws by overseeing executive branch officials. And what the Court said in Morrison was that at least for agencies such as the FTC, the President retains ample authority to do that where he can remove them for cause. The same as the FTC set up is different than the Bureau. In that it's headed by a multi-member commission. That is a factual distinction, but it's a distinction that doesn't make a constitutional difference here because what SALA law is unable to explain is why, if for-cause removal allows the President sufficient power to oversee the members of a commission, why the same isn't also true of an agency headed by one official. If anything, oversight would seem to be easier in the case of one official where the lines of accountability are clear. If the President has an issue with how the federal consumer financial laws are being administered, he knows exactly who to blame. If those problems rise to the level that they could justify for-cause removal, he can change the Bureau's leadership wholesale with a single removal rather than the multiple for-cause removals that would be required to ensure a change of direction at a commission. And I would also, going back to your original question, Judge Zuhairi, emphasize that SALA law is not mounting the sort of holistic argument that you described pointing to various features of the Bureau's structure and saying that somehow they create a problem. Their argument is limited to the for-cause removal protection, and we think under controlling Supreme Court case law, it's clearly constitutional. Well, they do rely on the single person versus many persons. That's true, Your Honor, but again, we think that's a distinction that doesn't make a difference. So it's for-cause plus individual, I would say, as I understood their argument. I agree, Your Honor. And, you know, the Supreme Court's cases in this area have-the Supreme Court has looked at individuals in Myers and in Morrison, and it's looked at commissions in Humphreys and Free Enterprise Fund, and it's never suggested that this distinction has any role to play in the constitutional analysis here. Can I ask this? If your position in this litigation is ultimately upheld, and we obviously won't be the last word on it, I guess I do have some trouble understanding why Congress couldn't decide, for example, that other members of the President's Cabinet should be insulated from his whim. Let's just say that in light of recent experience, Congress thought, you know, the Attorney General really shouldn't be someone who's removable at will. Let's just create a new agency that pretty much all of the Department of Justice's powers are transferred to. I ask that because when I look at the director of this agency, she doesn't look any different to me from another member of the President's Cabinet in terms of the kinds of powers that she exercises. So if your position is upheld, why can't Congress just start cherry-picking other Cabinet-level agencies and decide to carve them out from under the President's control? Well, Morrison emphasized that for some officials, they must remain removable at will by the President, for the President to carry out his constitutional responsibilities. Now, which officials must be removable at will, and which ones can be protected by a for-cause provision such as the one here, is a question that the Court has repeatedly declined to address. Humphreys' executor itself acknowledged at the end that there would be a field of doubt between the FTC commissioners that it was considering and the postmaster that was at issue in Myers' Wiener v. United States, which was another unanimous case affirming for-cause protection, said that, you know, the versatility of circumstances often mocks a natural desire for definitiveness in this area. The Court made the same point generally in Morrison, in language we quote in our brief. So the Supreme Court has not seen the need to draw that line. Yeah, that's not a very satisfying answer. You've kind of danced around. But I'm just asking, I look at the director of the CFPB, right? It seems like that's somebody who would ordinarily be thought of as a member of the President's Cabinet in terms of the types of powers that that agency exercises. And all I'm asking is if that-if it's okay for Congress to put her outside the President's control, what's to stop Congress from deciding that any other-what distinguishes the Attorney General, the Treasury Secretary, pick whatever Cabinet level head you want, what distinguishes them from the director in terms of the kinds of powers, executive powers, that the person exercises? That's all I'm asking. Let me answer your question more directly, Judge Wofford. Wherever exactly this line is, we know that forecast removal protection is acceptable for the heads of the FTC. The Bureau's functions and powers are remarkably similar, as the D.C. Circuit said, to the FTC, with the caveat that the Bureau exercises its powers over a relatively narrow area of the economy, consumer financial products and services, whereas the FTC, even at the time of Humphreys, had broad powers over all of commerce, essentially. So wherever that line is, the Bureau is remarkably similar in structure and powers to the FTC. I think I would disagree that there's anything about the director that would make it a Cabinet-level official necessarily. But, you know, the en banc decision in PHH considered this issue and gave its reasons why it didn't think it would be possible for Congress to try to limit removal over Cabinet officials because of the powers they exercise, their place in the line of presidential succession, and for other reasons. But wherever this line exists, we are on the same side of it as the FTC. Thank you, Counsel. Mr. Biscotti, you have a minute. Thank you. I'll try to be brief. As I sat here, Judge Watford and Judge Khoury, I thought your questions to Mr. Friedel were quite related, and it goes to the unique and novel nature of the CFPB and what was going to stop further encroachment to, for example, the Cabinet. And this is something that was discussed in the Supreme Court's most recent decision on this issue in the Free Enterprise case. The Court focused on the novel structure and looked at the encroachment and did not entertain the notion that, well, two levels of for-cause removal is really no different than one. The Supreme Court says it's incremental. It's mere arithmetic doesn't answer the question. You need to look at the overall structure and if there's any historical precedent for it, and there's not as much as CFPB would like to analogize itself to the FTC. It's different structurally. It's different in the scope and breadth of the powers. And when you look at Humphrey's executors, you need to look at the way the Court examined the FTC in that case and the language of that case where it described it as quasi-judicial, quasi-legislative, non-executive. Over the course of time, looking back at it, there's been numerous cases that have commented on it, but when looking at the holding in that case, I think it's important to look at what the Court itself was saying about the structure of that entity, and it's much different than the CFPB today. Thank you, Counsel. The case just argued is submitted. We appreciate very much the helpful arguments from both counsel.
judges: Graber, Watford, Zouhary